# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CERRON HAWKINS,

*Plaintiff*,

v.

WHOLE FOODS MARKET GROUP, INC.,

*Defendant*.

Civil Action No.  1:24-cv-03027 (CJN)

## MEMORANDUM OPINION

Pro se plaintiff Cerron Hawkins asserts discrimination, retaliation, and hostile work environment claims against his former employer, Whole Foods Market Group, Inc.  For the reasons below, the Court grants Whole Foods' motion to dismiss.

### I.    Factual Allegations

Hawkins began working as an overnight team member at a Whole Foods store in Washington, D.C., on June 16, 2023.  ECF No. 16 ("AC") at 1.[1]  Hawkins is African American, and the store's staff was predominately Latin American.  *Id.* at 1–2.  A group of "Latin or Hispanic" employees of "immigrant descent" had all supervisory authority and would "speak Spanish in front of" the new hires, "aware of who can understand Spanish and who can't."  *Id.* at 1–2.

On July 28, 2023, Whole Foods transferred Hawkins to a location in Silver Spring, Maryland, for training.  *Id.* at 2.  There, he was accused of theft and told to leave the store, despite receiving "[n]o proof" from Whole Foods.  *Id.*  Hawkins subsequently returned to work at his

---

[1] The Court draws from the allegations set forth in Hawkins' amended complaint, which at the motion-to-dismiss stage are accepted as true.  *See NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42 (D.C. Cir. 2015).

1

former Whole Foods location where, on an unspecified date, his supervisor Rotimmi Davis "violently" knocked a box of merchandise toward Hawkins. *Id.* at 2–3; *see also* ECF No. 18 ("Opp.") at 3 (identifying Davis). Hawkins reported that incident to Whole Foods. AC at 3. Tensions between Hawkins and Davis escalated, with the latter following Hawkins throughout the workplace. *Id.* Davis would also "speak in an exaggerated accent" and make "offensive" comments about Hawkins' appearance and intelligence, and "would convey his disgust or dislike for what he saw" even though "Hawkins did not ever ask for his opinion." *Id.* Davis apologized to Hawkins after Hawkins filed a report with Whole Foods but "continued to harass Mr. Hawkins" "like he had no self control." *Id.*

A different employee, Channgel Santana, later "tickled [Hawkins] on the shoulder," which "was intended to facilitate a negative reaction." *Id.*; Opp. at 3 (identifying Santana). Santana criticized Hawkins' work, made complaints to Hawkins' superiors, and spoke with an "exaggerated accent that was difficult to understand," which caused delays in Hawkins' tasks. AC at 3. Santana "spoke perfect English with a very easy to understand accent" in other moments. *Id.* at 4. Hawkins reported those incidents to store management. *Id.* Hawkins claims that "he had no issues with" Santana "prior to making [a] report concerning" Davis's conduct. Opp. at 4.

On October 2, 2023, a coworker named Sebastian Martin "impede[d] Mr. Hawkins' work productivity by blocking his pathway at work" in an effort "to get an emotional response and instigate an altercation." AC at 4; Opp. at 3 (identifying Martin). That escalated on October 2, 2023, when Martin grabbed Hawkins' tools and shoved and threatened Hawkins. AC at 4.

Around the same time, the grocery store "hierarchy" and "Latin, Hispanic, and immigrant team members" took overtime opportunities as they appeared and workload increased, despite Hawkins having been previously promised "an increase in work beginning in October and ending

2

after January." *Id.* at 5. Hawkins formed the belief that "the harassment and assault he experienced from his team members was to compel [or] force him to resign" in order to "create overtime hours for increased pay" for his Hispanic colleagues. *Id.*

Hawkins, on an unspecified date, eventually met with store leadership in person and a regional director through video conference. *Id.* at 4. On October 18, 2023, an assistant store manager informed Hawkins by telephone that his job was terminated. *Id.*

## II.    Procedural History

Hawkins filed a Charge of Discrimination with the Equal Opportunity Employment Commission on July 23, 2024. *See* ECF No. 1-1 at 5. In that document, Hawkins alleged:

> I began working as an Overnight Grocery Team Member in early June 2023. From the start, I endured treatment that involved accusations of theft, constant scrutiny of my work, and ridicule of my physical appearance by both management and colleagues. Despite repeatedly raising these issues with management and the ethics line, they were never addressed. My employment was terminated around October 18, 2023, following a complaint I made to the ethics line and management regarding an assault by a co worker. I believe Respondent favor Hispanic employees over African American workforce.

*Id.* The EEOC informed Hawkins that it would not proceed further with an investigation of his claims but notified him of his right to sue Whole Foods for the conduct alleged. *Id.* at 1.

Hawkins filed a standard form complaint against Whole Foods in October 2024, attaching the EEOC right-to-sue letter and charge of discrimination to his complaint. *See* ECF Nos. 1, 1-1. The Court granted Whole Foods' motion to dismiss in June 2025. ECF No. 11. In particular, the Court dismissed Hawkins' tort and contract claims with prejudice because they were barred by the District of Columbia Workers' Compensation Act, *see id.* at 3–4, and dismissed Hawkins' Title VII claims without prejudice because he failed to allege sufficient facts to state a plausible claim for relief, *id.* at 4. Hawkins filed an amended complaint in February 2026, which is best read as

advancing three distinct Title VII claims: (1) hostile work environment based on race, color, and national origin; (2) disparate treatment discrimination based on race, color, and national origin; and (3) retaliation. *See generally* AC.

### III.    Legal Standard

Pro se litigants must comply with the Federal Rules of Civil Procedure. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Under Rule 12, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiffs cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). But pro se plaintiffs are held "to less stringent standards than those applicable to formal pleadings drafted by lawyers," and this "liberal standard extends to consider[ing] supplemental material filed by a pro se litigant in order to clarify the precise claims being urged—including facts set forth in a plaintiff's opposition to a motion to dismiss." *Naz v. Wright*, 177 F.4th 1242, 1246 (D.C. Cir. 2026) (citation modified).

### IV.    Hawkins' Claims are Time-Barred

"Prior to filing a suit alleging violations of . . . Title VII, a plaintiff must exhaust h[is] administrative remedies." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019). "That means filing an administrative charge with the EEOC and allowing the agency time to act on the charge before commencing litigation." *Id.* (citation modified). "Title VII requires an aggrieved employee to file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." *Lilly v. D.C.*, 657 F. Supp. 3d 65, 79 (D.D.C. 2023) (quotation

marks omitted); *see also Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014). "Calculating [180] days backwards from" July 23, 2024—the date on which Hawkins filed his EEOC charge— "only Title VII claims occurring on or after [January 25, 2024] fall within the timely filing window." *Id.* at 80.[2]

All of Hawkins' allegations involve conduct occurring between June 16, 2023, and his termination in October later that year. *See generally* AC. But Hawkins did not file his charge with the EEOC until July 23, 2024, and he does not argue that his claims were properly brought before the EEOC. *See generally* Opp.; ECF No. 19 at 1. Therefore, because each of Hawkins' allegations concern conduct falling outside the requisite 180-day window, his claims fail at the threshold.

### V.      Hawkins' Does Not Sufficiently Allege Title VII Claims

Even if Hawkins' claims could survive Title VII's exhaustion requirement, his amended complaint still fails to sufficiently allege facts supporting his hostile work environment, discrimination, and retaliation claims.

### A.      Hostile Work Environment

To state a Title VII hostile work environment claim, a plaintiff must allege facts showing "that his employer subjected him to discriminatory intimidation, ridicule, and insult." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quotations omitted). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including

---

[2] The 180-day period is extended to 300 days if the aggrieved employee "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1); *Dieng v. Am. Institutes for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 12 (D.D.C. 2019). Because Hawkins does not allege that he filed a complaint with the District of Columbia's Office of Human Rights, the 180-day period applies. *Dieng*, 412 F. Supp. 3d at 12; *Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 171 (D.D.C. 2012) ("Where Plaintiff has failed to pursue her grievances through the state's administrative processes, as here, she cannot invoke the longer presentment [300-day] window and must file her claims within the 180–day window to be timely.").

the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* Hostile or harassing behavior "must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

A "plaintiff asserting a claim based on a hostile work environment faces a high hurdle," and Hawkins has not met it. *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 59 (D.D.C. 2022) (citation omitted). Hawkins implies that the predominantly Hispanic workforce was biased against him because he was not Hispanic. But a "mere difference" in race or national origin "between supervisors and an employee, without more, cannot support an inference of intentional discrimination," *Haleem v. Dep't of Def.*, No. 23-cv-1471, 2024 WL 230289, at *10 (D.D.C. Jan. 22, 2024) (citation modified), and Hawkins provides no basis to believe that his colleagues mistreated him *because of* his race. Further, the alleged harassment is not sufficiently extreme as to "amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Hawkins' allegations involve mocking, pushing, and some interferences with his day-to-day work. *See generally* AC. Those allegations do not convey that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult," or that such discrimination was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[3] In short, "in the absence of some greater indicator" of racial bias, the mere fact of Hawkins' race "cannot

---

[3] In fact, substantially worse allegations are frequently found insufficient to support hostile work environment claims. *See, e.g.*, *Grays v. Noem*, No. 24-cv-1809, 2025 WL 2643421, at *6 (D.D.C. Sept. 15, 2025) (alleged harms including "being investigated for misconduct, subjected to two offensive comments about Jewish individuals, laughed at, denied one water break and physical fitness time, and passed over for a position" all "individually and collectively fall short of supporting a hostile work environment claim"); *Dews v. Howard Univ. Hosp.*, No. 24-cv-01490, 2025 WL 2377993, at *3 (D.D.C. Aug. 15, 2025) (similar).

substantiate a claim that [his] workplace was permeated with discriminatory intimidation, ridicule, and insult." *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 65 (D.D.C. 2003) (quotation marks omitted).

### B.    Disparate Treatment Discrimination

The "two essential elements" of a Title VII discrimination claim are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch*, 550 F.3d at 1196.  A plaintiff can plead an inference of discrimination with "direct evidence of . . . animus" against the protected class or by pointing to a "similarly situated" comparator outside the protected group. *Burton v. D.C.*, 153 F. Supp. 3d 13, 66–67 (D.D.C. 2015).

Hawkins alleges an adverse action—his termination—but he fails to plausibly allege how his termination stemmed from his protected status or that he was treated differently from a similarly situated employee who does not share that status.  At most, Hawkins suggests that his Hispanic coworkers emphasized their "racial and cultural differences," which manifested through the "playing [of] music in the store" and his team leader "speak[ing] in an exaggerated accent." AC at 3–4.  As to his termination itself, Hawkins alleges that he believes the store manager who told him that he was fired is the brother of the employee who shoved him.  *Id.* at 4.  But Hawkins' amended complaint is "devoid of any factual material that would support a 'plausible inference' that [his] supervisors acted as they did on account of" Hawkins' race.  *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at *8 (D.D.C. Aug. 18, 2022).  In other words, because Hawkins' allegations establish no "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, his discrimination-based claim must be dismissed.

### C.    Retaliation

To make out a claim of retaliation, a plaintiff must allege he was punished for engaging in some protected activity. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006).  "An activity

is protected if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (quotation marks omitted). Any "communication" complaining of discriminatory conduct between an employee and his employer "must assert discrimination on the basis of a protected trait." *Newman v. Howard Univ. Sch. of L.*, No. 23-cv-0436, 2024 WL 4227723, at *7 (D.D.C. Sept. 18, 2024).

Although Hawkins raised issues with Whole Foods, he did not tie those complaints to his race, color, or national origin. *See* AC at 3–4. Instead, Hawkins offered other explanations for his mistreatment at the hands of his colleagues. He suggests, for instance, that the abusive conduct directed his way may have been an attempt "to compel [and] force him to resign [to] create overtime hours for increased pay rate for [other] crew." *Id.* at 5. Hawkins was not required to utter any "magic words" to his employer, but his report to his employers "must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). There is no indication that Hawkins' report did so here. And in any event, Hawkins does not allege that Whole Foods terminated him in retaliation for making any complaint, or that the decisionmaker even knew that Hawkins had lodged a complaint. Hawkins thus also fails to plead "a causal link between the protected activity and the adverse action" necessary to sustain a retaliation claim. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).

## VI.    Conclusion

For the foregoing reasons, Whole Foods' Motion to Dismiss, ECF No. 17, is granted. A separate Order accompanies this Opinion.

DATE:  July 24, 2026

CARL J. NICHOLS
United States District Judge

8